OPINION
{¶ 1} Appellants, Midwest Fireworks ("Midwest") and Pacific Financial ("Pacific"), appeal the judgment entry of the trial court affirming the administrative appeal of the revocation of their Fireworks Wholesaler License and their Fireworks Manufacturer License by appellee, the Ohio Department of Commerce, Division of State Fire Marshal ("SFM"). For the reasons that follow, we affirm the trial court's decision.
 {¶ 2} On August 31, 2000, SFM sent license renewal applications to Midwest for fireworks wholesale and/or manufacturing licenses. On October 18, 2000, Laurence Lomaz, Chief Executive Officer for Midwest and Pacific, completed and submitted its applications for renewal. After receiving Midwest's applications, SFM determined certain information had not been supplied. Accordingly, on October 18, 2000, SFM sent Midwest a letter outlining additional requirements for the license renewal process. The letter stated, in relevant part:
 {¶ 3} "Please also include a complete listing of the actual owner(s) for each parcel of the property constituting the licensed premises and a copy of any lease/rental agreements for the property if the actual parcel owners are not the same as the licensee."
 {¶ 4} Lomaz gathered the supplemental information, submitted the materials to SFM, and Midwest was issued the licenses. However, approximately one year later, SFM learned the subject property was not titled in either Lomaz's, Midwest's, or Pacific's name.[1] Due to this alleged misrepresentation, SFM commenced proceedings to revoke Midwest's licenses. On October 29, 2001, SFM sent Midwest a Notice of Opportunity for Hearing on the proposed revocation. The notice indicated the proposed revocation was based upon allegations that Midwest, through Lomaz, had supplied SFM with misleading information and statements regarding the ownership of the property upon which the licensed premises are situated. The notice further set forth various statutory and administrative code sections which appellants allegedly violated
 {¶ 5} After receiving the notice of the proposed revocation, Midwest requested a hearing on the allegations which was held on April 16, 2002. At the hearing, SFM presented evidence that Midwest was required to submit information regarding the ownership of the property in question. Midwest failed to provide this information; after being notified that SFM would need the omitted data, Midwest provided false or misleading information regarding the actual ownership of the property. Accordingly, SFM maintained, Midwest's applications violated specific sections of the Ohio Revised Code and Ohio Administrative Code and its applications be revoked.
 {¶ 6} While Lomaz did not attend the hearing, counsel for Midwest and Pacific was present to defend and/or "explain" the evidentiary incongruities. Counsel submitted that, while the Cuyahoga County Clerk of Courts was the "actual title owner of the property, the control of the property still [was] in the hands of Pacific Financial." Appellants' counsel also maintained that:
 {¶ 7} "* * * there was no intent to mislead the Fire Marshal in any way, shape, or form.
 {¶ 8} "In fact, the property — it was our intention that the property would be back in the hands of Pacific well before, I believe, even the letter was sent by [the Fire Marshal].
 {¶ 9} "And that while we understand that the application is on its face, false, we believe there's a valid explanation."
 {¶ 10} On May 9, 2002, the Hearing Officer filed his Report. In the Report, the Hearing Officer concluded that Midwest provided SFM with misleading information regarding the ownership of the subject property when they stated appellant Pacific was its actual owner. Consequently, the Officer recommended that Midwest's Manufacturer and Wholesaler Licenses be revoked.
 {¶ 11} On May 16, 2002, SFM filed objections to the Hearing Officer's Report; SFM indicated it did not object to the Hearing Officer's substantive conclusion but sought a modification of the Report which would reflect that Midwest was obligated by the Ohio Administrative Code to submit the parcel number and a copy of the deed of ownership or land contract with their application pursuant to FM-3103.6. Midwest did not do so and SFM maintained this omission was pertinent to the revocation proceedings. On June 6, 2002, the Ohio Department of Commerce, Division of State Fire Marshal adopted the conclusions of Hearing Officer's report but modified the content to reflect Midwest's failure to provide a copy of the deed, etc., during the application process.
 {¶ 12} On June 17, 2002, appellants appealed the June 6, 2002 order to the Portage County Court of Common Pleas. On July 12, 2002, appellants moved the court for a hearing to introduce new evidence and raise constitutional issues. On August 23, 2002, the court held a hearing on the motion. The court ultimately determined that the constitutional issues would only be addressed if appellants were not successful in their appeal on the non-constitutional issues.
 {¶ 13} After a series of stays resulting from Pacific's voluntary filing of Chapter 11 bankruptcy, the trial court reinstated the action on July 13, 2004 and entered a final judgment on the same day. The Court affirmed SFM's order revoking Midwest's licenses. Appellants point out the trial court acted without addressing the constitutional issues or allowing new evidence. Appellants now appeal the trial court's July 13, 2004 final judgment and assign three errors for our review.
 {¶ 14} Appellants' first assignment of error alleges:
 {¶ 15} "[1.] With respect to the alleged misrepresentation by appellants that resulted in the revocation of appellants fireworks licenses the court of common pleas erred by applying the wrong standard of review in an administrative appeal and in consequently reaching an erroneous conclusion."
 {¶ 16} In their first assignment of error, appellants contend the trial court employed the wrong standard of review in arriving at its conclusion that SFM properly revoked Midwest's licenses.
 {¶ 17} Appellants appealed the June 6, 2002 administrative decision to the Portage County Court of Common Pleas pursuant to R.C. 119.12. R.C. 119.12 sets forth a specific standard of review for administrative appeals; namely, a court of common pleas must affirm the decision of an administrative agency when that decision is supported by reliable, probative, and substantial evidence and is in accordance with the law. R.C. 119.12; see, also, Lewis v. Ohio Dept. of Human Services (2000),137 Ohio App.3d 458, 464.
 {¶ 18} The Supreme Court of Ohio has commented on the quality and quantity of evidence required to sustain an administrative decision pursuant to R.C. 119.12:
 {¶ 19} "(1) `Reliable' evidence is dependable; that is it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value." (Footnotes omitted.) Our Place, Inc. v. Ohio LiquorControl Comm. (1992), 63 Ohio St.3d 570, 571.
 {¶ 20} We review the court of common pleas decision for an abuse of discretion. Kennedy v. Marion Correctional Inst.,69 Ohio St.3d 20, 22, 1994-Ohio-83. However, where issues of law are involved, we exercise a plenary power of review. Lewis, supra. That is, issues of law require an "independent determination of the law to be applied to the facts found by the agency and held by the common pleas court to be supported by reliable, probative and substantial evidence." Franklin Cty Bd. of Commrs. v. StateEmp. Relations Bd. (1993), 92 Ohio App.3d 585, 588.
 {¶ 21} We first note that the trial court utilized the proper standard of review in its judgment entry. Specifically, the trial court reviewed the evidence as a whole and determined the agency's determination was supported by reliable, probative and substantial evidence. In this respect, appellant's first assignment of error is without merit.
 {¶ 22} That said, appellants additionally argue that the revocation of Midwest's licenses turns on a legal question, i.e., whether Pacific was the "actual" owner of the subject property of this litigation. Put differently, appellants maintain the matter hinges upon a legal interpretation of the deed which, on one hand, quitclaims the property to the Cuyahoga County Clerk of Courts, but, on the other hand, limits the Clerk's "ownership" in the subject property to a mere security interest.
 {¶ 23} While appellants' argument may be functionally accurate, we disagree with their position as it pertains to the instant matter. We agree, that there may be a substantive question as to what interest Pacific retained in the subject property after it was quitclaimed to the Cuyahoga County Clerk of Courts. However, such an inquiry was inconsequential for purposes of the administrative hearing at issue.
 {¶ 24} Pursuant to SFM regulations, applicants for fireworks licenses at all times relevant to the current matter were required to submit "a complete listing of the actual owner(s)" of the property on which a firework manufacturer or wholesaler did its business. Irrespective of any equitable or functional ownership appellants believed they possessed subsequent to quitclaiming the property to the Cuyahoga County Clerk of Courts, the evidence demonstrated that the "actual owner" was the Clerk of Courts. Even appellants' counsel admitted this conclusion at the administrative hearing.
 {¶ 25} To be sure, the "actual" ownership possessed by the Clerk of Courts was somewhat unorthodox: The deed stated the transfer was accomplished merely to secure a bond; moreover, after the transfer, appellants contend they maintained the property as though they were the actual owners. However, appellant's reason(s) for making the transfer and evidence of their role as "housekeepers" is outside the scope of the inquiry at hand. SFM required a complete listing of the actual owners; The Clerk of Courts was an actual owner and the evidence appellant emphasizes does not undermine this reality.
 {¶ 26} Fireworks Wholesaler and Manufacturer Licensees are required to comply with both the Ohio Revised Code and the Ohio Administrative Code. O.A.C. 1301:7-73-1(D)(2) [FM-3103.2] states:
 {¶ 27} "Denial or revocation of license: A manufacturer's or wholesaler's license shall be denied or revoked pursuant to Chapter 119. of the Revised Code when any of the following occur:
 {¶ 28} "* * *
 {¶ 29} "(b) The applicant has failed to provide the required information on the application form provided by the state fire marshal.
 {¶ 30} "* * *
 {¶ 31} "(e) The applicant has made a misrepresentation or filed false statements."
 {¶ 32} The information sought by SFM was clear and unambiguous; appellants simply failed to fully comply with the request and, through this failure, they unquestionably failed to provide the information and misrepresented the nature of the actual ownership of the property. Appellants appear to admit this conclusion but wish to engage in polemics as to why they acted as they did. It seems clear that SFM was not ultimately interested in why appellant failed to produce accurate information; rather, SFM was only concerned that appellant, after being unequivocally prompted to do so, failed to produce an accurate account of the ownership of the property. Accordingly, appellants' first assignment of error is overruled.
 {¶ 33} "[2.] The court of common pleas abused its discretion in finding the State Fire Marshal's conclusion that appellant's failed to provide a deed was supported by reliable, probative[,] and substantial evidence."
 {¶ 34} Under the second assigned error, appellants maintain the trial court erred by affirming SFM's revocation because the administrative order inappropriately modified the Hearing Officer's Report to reflect appellant's failure to provide a deed to the subject property. Appellants argue they had no notice that they were required to include in their application a copy of the property deed for the subject property. Appellants' note that the October 25, 2000 letter from SFM sought certain information regarding the actual owners of the property; however, appellants' maintain that a request for the property deed was "notably lacking." As they had no knowledge of the necessity of the deed, appellants argue the lack of a deed could not be legitimately used as a basis for their license revocation.
 {¶ 35} While appellants are correct that FSM never formally requested production of the deed in its October 25, 2000 letter, they are incorrect that there was no probative evidence to support the revocation of their license on the basis of their failure to provide a copy of the deed of the subject property. Specifically, appellants had some notice that they were required to produce the deed before their licenses were revoked. On October 29, 2001, SFM sent appellants a notice of an opportunity to request a hearing on the proposed revocation of the licenses. Within this notice, SFM references violations of various statutes and administrative code sections, one of which was FM-3103.6, which provides:
 {¶ 36} "Ownership: Applicants for all manufacturer's and wholesaler's licenses shall submit with their application the parcel number and a copy of the deed of ownership or land contract."
 {¶ 37} The October 29, 2001 notice also referred to O.A.C. 1301:7-7-31(D)(2)(b) [FM-3103.2], which states:
 {¶ 38} "A manufacturer's or wholesaler's license may be denied or revoked pursuant to Chapter 119. of the Revised Code when any of the following occur:
 {¶ 39} "* * *
 {¶ 40} "(b) The applicant has failed to provide the required information on the application form provided by the state fire marshal * * *"
 {¶ 41} Appellants had notice of SFM's requirement that a deed of the subject property be provided approximately six months before the actual revocation hearing took place.[2]
Appellants had an opportunity to submit a copy of the deed before the hearing but did not do so. For these reasons, we believe the trial court did not abuse its discretion when it adopted the administrative revocation of Midwest's licenses which was partially based upon appellants' failure to provide a deed of the subject property pursuant to FM-3103.6.
 {¶ 42} In any event, as discussed in appellants' first assignment of error, SFM had adequate evidence before it that appellants (1) failed to provide requested information regarding the ownership of the property and, in so doing (2) misrepresented the actual ownership of the subject property. Pursuant to O.A.C. 1301:7-7-31(D)(2) [FM-3103.2], this evidence was sufficient to revoke appellants' licenses. Thus, assuming arguendo appellants were not on notice that they were required to submit a copy of the deed, the trial court acted properly in affirming SFM's revocation of appellants' licenses. In essence, even were we to sustain appellants' argument regarding the purported failure of notice, any error would be harmless.
 {¶ 43} Appellants' second assignment of error is overruled.
 {¶ 44} "[3.] The court of common pleas erred by ruling on the merits of this case and entering final judgment without addressing constitutional issues raised by appellants and [without] providing appellants the opportunity to present evidence."
 {¶ 45} In their final assignment of error, appellants argue the court erred in entering a final judgment on this matter without hearing their due process arguments and without affording them the opportunity to present new evidence. We disagree.
 {¶ 46} We initially note an administrative agency does not have the authority to determine whether an ordinance is constitutional because such questions invoke the exclusive powers of the judicial branch. Mobil Oil Corp. v. City of Rocky River
(1974), 38 Ohio St.2d 23, 26. Accordingly, "* * * when a party raises this issue as part of an administrative appeal, and upon request, the common pleas court is required to conduct a de novo hearing because evidence as to this point would not have been presented before the [agency]." Brown v. Painseville Twp. Bd. ofZoning, 11th Dist. No. 2004-L0-47, 2005-Ohio-5608, at ¶ 26.
 {¶ 47} While appellants' argument is phrased as a "constitutional" challenge, they do not attack the constitutionality of any particular statute. Rather, appellants attack the acts or omissions of SMF as they relate to its notification practices, i.e., appellants claim SFM failed to adequately apprise them of the documents they were required to produce in order to comply with the statutes to which their licensure was subject. Appellants' argument is a factual
challenge to SFM's procedure, not a legal challenge to the constitutionality of the statutes in question. A review of this sort does not impermissibly encroach upon the exclusive powers of the judicial branch. See, generally, MacConnell v. Ohio Dept. ofCommerce, 10th Dist. No. 04AP-433, 2005-Ohio-1960. Because appellants failed to raise the procedural objection at the administrative level, they waived the issue on appeal. Id., at ¶ 21; Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.
(1993), 91 Ohio App.3d 76, 80.
 {¶ 48} Even had appellants properly preserved this issue, we believe they were afforded due process of law. "Due process rights guaranteed by the United States and Ohio Constitutions apply in administrative proceedings." MacConnell, supra, at ¶ 24. However, due process is a malleable concept and calls for such procedural safeguards as the particular case demands. LTVSteel Co. v. Indus. Comm. (2000), 140 Ohio App.3d 680, 688-689. In an administrative hearing,
 {¶ 49} "[t]he fundamental requirement of procedural due process is notice and hearing, that is, an opportunity to be heard. * * *
 {¶ 50} "Notice and hearing are necessary to comply with due process in an administrative proceeding which revokes an individual's license to practice a profession." Korn v. OhioState Medical Bd. (1988), 61 Ohio App.3d 677, 684. (Internal citations omitted).
 {¶ 51} As discussed in their second assignment of error, appellants had notice they were required to produce the deed as early as October 29, 2001, the date on which SFM sent appellants the "Notice of Opportunity for Hearing." They failed to do so after being directed by SFM. Moreover, appellants were afforded an opportunity to be heard and present evidence on their own behalf at the administrative revocation hearing. Instead of raising their procedural objection at that time, appellants presented a defense consisting of mitigating circumstances relating to their reasons for not complying with SFM's requests. Based upon the record, we hold appellants were afforded due process at the administrative hearing level.
 {¶ 52} For these reasons, we hold the trial court did not err in failing to address these challenges. Appellants' third assignment of error is overruled.
 {¶ 53} For the above reasons, appellants' three assignments of error are without merit and the judgment of the Portage County Court of Common Pleas is affirmed.
O'Neill, J., concurs.
Grendell, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.
[1] By way of background, the basis of the proposed revocation stemmed from a conveyance which occurred one year prior to Midwest's October 2000 application. In November of 1999, appellants quit-claimed the property at issue to the Cuyahoga County Clerk of Courts as security for a bond relating to a separate, unrelated matter. The quit-claim deed was unusual in various respects: First, the Cuyahoga County Clerk of Courts disclaimed any legal or equitable responsibilities associated with the property, such as maintenance or upkeep. Moreover, the deed facially limited the interest conveyed to that of a "security for an attachment bond in Cuyahoga County Common Pleas Court Case No. 367569 in the sum of * * * $196.000.00 * * *." Pacific's claimed equity in the property at the time of the above conveyance was purportedly $290,000, well in excess of the bond amount listed in the quit-claim deed. Nevertheless, the deed was duly recorded and indicated the Clerk was the nominal owner, by virtue of the quit-claim deed, of the parcel.
[2] Even if appellants had no "actual" notice, it is a fundamental legal principle that ignorance of the law is no excuse. See, e.g. Burdick v. Nevel (Apr. 20, 1999) 10th Dist. No. 98AP-697, 1999 Ohio App. LEXIS 1800, at 17. In State ex rel.Bd. of Edn. of N. Canton Exempted Village School Dist. v. Holt
(1962), 174 Ohio St. 55, 57, the Supreme Court of Ohio stated "the general rule is that ignorance of the law is no excuse: and that "to hold that those who know about such rules or regulations are bound and those who do not know are not bound would make for a most unjust administration of law." This principle suggests that prospective licensees should seek confirmation that their applications are complete upon submission; parties who fail to so act do so at their own peril.