[Cite as *Lambert v. Lake Cty. Dept. of Children & Family Servs.*, 2013-Ohio-433.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| DONNA LAMBERT, | : | **O P I N I O N** |
| Appellant, | : | |
| - vs - | : | **CASE NO. 2011-L-147** |
| LAKE COUNTY DEPARTMENT | : | |
| OF CHILDREN AND FAMILY | | |
| SERVICES, | : | |
| Appellee. | : | |

Administrative Appeal from the Lake County Court of Common Pleas, Case No. 10CV001083.

Judgment: Reversed and remanded.

*Lester S. Potash*, 55 Public Square, Suite 1717, Cleveland, OH 44113-1901 (For Appellant).

*Charles E. Coulson*, Lake County Prosecutor, and *Joshua S. Horacek*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee).

THOMAS R. WRIGHT, J.

{¶1}     Appellant, Donna Lambert, appeals from the judgment of the Lake County Court of Common Pleas affirming an administrative decision revoking her Type B home child care provider certificate.

{¶2} Appellee, Lake County Department of Job and Family Services ("JFS"), certified appellant as a Type B home child care provider wherein she provided publicly-funded daycare services. *See* R.C. 5104.01(SS).[1]

{¶3} Upon placement of a child with appellant, she would complete and return the requisite forms to Catherine Monahan, a social worker with JFS, for its approval and payment following JFS's review of the time records submitted by appellant. JFS ultimately undertook an investigation of appellant's child care activities over a 37-month time period, reviewing various payment records and time sheets from January 2007 through December 2010. Following its investigation, JFS notified appellant of its intention to revoke her Type B certificate, alleging appellant's multiple violations of ten separate administrative regulations governing child care. As a result, appellant requested and JFS conducted a hearing. At the close of the hearing, the hearing officer found multiple violations of two regulations, one of which involved the six-hour rule per Ohio Adm. Code 5101:2-14-20(K), and the other of which involved the six-child rule per Ohio Adm. Code 5101:2-14-16(A).

{¶4} Ohio Adm.Code 5101:2-14-06(B)(1) provides that "[n]oncompliance with Chapter 5101:2-14 of the Administrative Code" is grounds for the revocation of a certificate. The hearing officer found a violation of Ohio Adm.Code 5101:2-14-06(B)(1), specifically, four violations of Ohio Adm.Code 5101:2-14-16(A), the six-child rule, and 55 violations of Ohio Adm.Code 5101:2-14-20(K), the six-hour rule. As a result of the foregoing violations, JFS revoked appellant's certificate. Appellant timely filed an administrative appeal to the court of common pleas under R.C. Chapter 2506. Following a hearing, the trial court affirmed JFS's decision, finding that there was

---

1. Now codified as R.C. 5104.01(VV).

2

reliable, probative, and substantial evidence that appellant violated the six-child limit four times and provided child care on 55 occasions without taking a six-hour break during any one 24 hour period. Appellant filed a timely appeal with this court, asserting the following assignment of error:

{¶5} "The trial court committed prejudicial error in affirming the agency's revocation of Lambert's certificate."

{¶6} With respect to the standard of review applied by courts of common pleas and courts of appeals in administrative appeals, this court recently stated:

{¶7} "'Administrative appeals * * * are governed by R.C. Chapter 2506. (* * *) The appeal is first addressed to the court of common pleas of that county. (R.C. 2506.01.) The common pleas court's standard of review is set forth in R.C. 2506.04: "(T)he court may find that the order (* * *) or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." (* * *)'

{¶8} " * * *.

{¶9} "'A trial court abuses its discretion when it fails "to exercise sound, reasonable, and legal decision-making."'" *Jackson v. Jackson*, 11th Dist. Nos. 2011-L-016 and 2011-L-017, 2012-Ohio-662, ¶25, quoting *Muscarella v. Muscarella*, 11th Dist. Nos. 2010-T-0091 and 2010-T-0098, 2011-Ohio-1159, ¶17, citing *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004)." *Shultz v. Village of Mantua*, 11th Dist. No. 2011-P-0054, 2012-Ohio-1459, ¶21-23.

3

{¶10} "R.C. 2506.04 grants a court of appeals reviewing the decisions of administrative agencies limited powers to review the judgment of the court of common pleas only on '*questions of law*.' *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, fn. 4. * * *. It does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court in its review of such decisions. *Id.* The appellate standard of review of such 'questions of law' is whether the court of common pleas abused its discretion. *Id.*" (Emphasis added.) *Rickard v. Trumbull Twp. Zoning Bd. of Appeals*, 11th Dist. Nos. 2008-A-0024, 2008-A-0025, 2008-A-0026, 2008-A-0027, and 2008-A-0028, 2009-Ohio-2619, ¶48.

{¶11} When an appellate court is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error ([o]f course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶67.

{¶12} Under her sole assignment of error, appellant presents four issues, each focused primarily on the six-child and six-hour rule. In her first issue, appellant alleges: "JFS's 'sign-off' on [her] scheduled hours and its payments thereof constituted its written approval as a variance to the 6-hour rule."

{¶13} Ohio Adm.Code 5101:2-14-20(K) states that "[t]he provider shall not provide child care services for a minimum of six consecutive hours out of every twenty-four hour period, unless otherwise *approved in writing* by the [county department of job

4

and family services.]" (Emphasis added.). The Ohio Admin. Code does not direct when written approval must be granted, the format for such approval, or whether there is a limit to the number of times a variance may be granted. Thus, the question of law before this court is whether JFS's "sign-off" on appellant's scheduled hours and its payments issued upon that "sign-off" means that appellant's deviations from the six-hour rule was "approved in writing" pursuant to Ohio Adm.Code 5101:2-14-20(K).

{¶14} JFS maintains that its "sign-off" merely entitled appellant to be paid for her services and did not constitute approval "in writing" to provide child care without taking a six-hour break. The trial court agreed with JFS and found specifically as follows in pertinent part:

{¶15} "Ms. Monahan testified that it was her job to discover violations of the Ohio Admin. Code. However, Ms. Monahan's failure to do her job does not mean that Appellant did not commit the violations. Further there is nothing in the administrative record to suggest that Ms. Monahan provided Appellant with written notice that she was permitted to provide child care without taking the required six hour break. Rather, Ms. Monahan's signature allowed Appellant to be paid by the State of Ohio for child care services."

{¶16} For the reasons that follow, we disagree with JFS and the trial court's conclusion that JFS did not give appellant approval "in writing" to vary from the six-hour rule. The salient issue is not whether Ms. Monahan did or did not perform her job correctly in failing to discover variances to the six-hour rule when reviewing appellant's time records. The issue is whether appellant received approval "in writing" for the variances.

5

{¶17} Ms. Monahan testified as follows at the administrative hearing:

{¶18} "MR. POTASH (APPELLANT'S COUNSEL): And these time records are regular time records that a care keeper must prepare and submit to you for approval?

{¶19} "MS. MONAHAN: Yes.

{¶20} "MR. POTASH: And then once they are approved, pay issues, payment will issue?

{¶21} "MS. MONAHAN: Yes.

{¶22} "MR. POTASH: Payment doesn't automatically issue upon submission of these records; is that correct? You - - who reviews the records?

{¶23} "MS. MONAHAN: I do.

{¶24} "MR. POTASH: And you review them to determine accuracy and compliance with regulations and for any irregularities, things of that nature?

{¶25} "MS. MONAHAN: Right. I compare them to the service authorization that is authorized for.

{¶26} "MR. POTASH: And if there is some error, you make the correction and if that reflects a change in the pay to be issued, so be it?

{¶27} "MS. MONAHAN: Yes.

{¶28} "MR. POTASH: So that which - - the payment that issues and certification of the records are basically your responsibility?

{¶29} "MS. MONAHAN: Yes.

{¶30} "MR. POTASH: And so payment doesn't issue unless and until you've certified that everything was approved?

{¶31} "MS. MONAHAN: Yes.

**{¶32}** "MR. POTASH: Now, to certify that everything is approved, you just call over the partition and say "Everything is fine" or must you sign off on it?

**{¶33}** "MS. MONAHAN: *I sign off on it.* (Emphasis added)

**{¶34}** "MR. POTASH: So there's a *written document that approves the hours and the payment to issue?* (Emphasis added)

**{¶35}** "MS. MONAHAN: *Yes.* (Emphasis added)

**{¶36}** "MR. POTASH: And if it weren't approved by you, I know this is kind of silly, but if it weren't approved by you in writing, no check would issue? If you did not sign off on the documents, then no check would issue?

**{¶37}** "MS. MONAHAN: We would correct it and then would issue a check based on the corrections.

**{¶38}** "MR. POTASH: How many times did you call Donna Lambert to tell her that her time charts did not appear to be consistent with administrative regulations?

**{¶39}** "MS. MONAHAN: I did not.

**{¶40}** "MR. POTASH: In fact, at no time, even though you went through great efforts to demonstrate what may be perceived to be in excess of a break period or, excuse me, the failure to have a break period of six hours or longer, at no time while this is going on had this come to your attention?

**{¶41}** "MS. MONAHAN: No.

**{¶42}** "MR. POTASH: *And, in fact, those are one of the things that you look for; is it not?* (Emphasis added)

**{¶43}** "MS. MONAHAN: Yes."

7

**{¶44}** Based on the foregoing testimony, following submission to Ms. Monahan of the monthly reports and time records, JFS's payments to appellant were not automatic, but issued only upon Ms. Monahan's "written approval" – "I sign off on it." Ms. Monahan admitted that her "sign-off" constituted a "written document" that approves the hours, number of children, and qualification for payment. Therefore, at all times relevant, JFS, through Ms. Monahan, was chargeable with direct knowledge of appellant's hours of service, the total number of children in her care, and whether those hours and number of children comported with the previous service authorization and applicable regulations.

**{¶45}** Additionally, at no time has JFS indicated that Ms. Monahan acted without authority when approving appellant's hours. Furthermore, the fact that Ms. Monahan testified that she made corrections when necessary would certainly have led appellant to assume that when she received payment, any errors had been adjusted to conform to the regulations or that any variances were approved. Moreover, at no time has JFS indicated that there is a prescribed form that must be completed in order for the provider to secure written approval for a variance from the six-hour rule.

**{¶46}** Accordingly, based on the foregoing, we hold that the trial court abused its discretion and erred as a matter of law in concluding that appellant did not have written approval for the 55 instances of variance from the six-hour rule. Appellant's first assignment of error is well-taken, and this court reverses on that issue.

**{¶47}** In her second issue, appellant contends: "Where [she] did not receive payment from JFS, she did not provide 'child care,' [and] thus could not violate either the 6-children or 6-hour rule." Specifically, appellant maintains that on occasions when

8

she was not paid for providing child care, i.e. for overtime when a child's caregiver failed to arrive on time, she was not actually providing "child care" or "child day care" for that child under R.C. 5104.01(L) and Ohio Adm.Code 5101:2-1-01(39). For the reasons that follow, we reject appellant's argument.

{¶48} Ohio Adm.Code 5101:2-14-16(A) states:

{¶49} "(A) The type B home provider may provide child care for no more than six children at any one time, and no more than three of those children may be under two years of age. When determining the total number of children who are in care, children of a caretaker who is present in the home shall not be included. The following children shall be included in the count:

{¶50} "(1) All children under six years of age.

{¶51} "(2) Children six years of age through seventeen years of age who are related to the provider and for whom care is privately or publicly funded.

{¶52} "(3) Children six years of age through fourteen years of age who are not related to the provider.

{¶53} "(4) Children fifteen years of age through seventeen years of age who are not related to the provider and for whom care is privately or publicly funded."

{¶54} In addition, R.C. 5104.01(L) and Ohio Adm.Code 5101:2-1-01(39) define "child care" and "child day care" as "administering to the needs of infants, toddlers, preschool-age children, and school-age children outside of school hours by persons other than their parents or guardians, custodians, or relatives by blood, marriage, or adoption for any part of the twenty-four-hour day in a place or residence other than a child's own home."

9

{¶55} We disagree with appellant's argument on this issue because under the foregoing code sections, payment is not a necessary element in the determination of whether she provided "child care" or "child day care" as a Type B home provider. The foregoing definitions make no reference to payment. Thus, the fact that appellant was not being compensated for overtime with respect to a particular child or children does not mean that she was no longer providing "child care" or "child day care" under the governing rules and regulations. Therefore, appellant's second issue is without merit.

{¶56} Appellant's third, and fourth issues are interrelated and address similar matters. Therefore, we will consider them together. In her third issue, appellant argues:

{¶57} "The violation of a statute or regulation does not mandate revocation of a child care certificate, but such is discretionary requiring the Agency to take into consideration the scope and severity of the violation(s), ordering revocation of a certificate only where such is 'necessary.'" In her fourth issue, appellant asserts: "The failure to consider a sanction other than revocation of [her] Certificate renders the decision arbitrary and contrary to law."

{¶58} At the time of appellant's revocation, R.C. 5104.11(B) provided in part: "If the county director of job and family services determines that the type B family day-care home complies with this chapter and any rules adopted under it, the county director shall issue to the provider a certificate to provide publicly funded child care, which certificate is valid for twelve months, unless revoked earlier. The county director *may revoke the certificate after determining that revocation is necessary*." (Emphasis added.)

10

{¶59} Similarly, Ohio Adm.Code 5101:2-14-06(A) states in part: "If the county department of job and family services (CDJFS) determines that the applicant or provider is not in compliance with Chapter 5101:2-14 of the Administrative Code and Chapter 5104. of the Revised Code, the CDJFS shall deny the application *or may revoke the certificate.*" (Emphasis added)

{¶60} Appellant alleges that the use of the terms "may revoke the certificate" in the above-referenced Code sections means that revocation of her certificate was not mandatory, and that the trial court abused its discretion by not considering mitigating evidence. In sum, appellant argues that revocation was too harsh of a sanction under the facts and circumstances of this case and was not "necessary."

{¶61} Having disposed of the 55 violations of the six-hour rule in our analysis under appellant's first assignment, we are left with the sole question of whether appellant's four violations of the six-child rule was sufficient to warrant revocation of her Type B certificate. However, under the applicable standard of appellate review set forth above in *Rickard*, 2009-Ohio-2619 at ¶48, that is not a question this court has the authority to answer.

{¶62} As previously stated, when reviewing the decisions of administrative agencies, our review of the judgment of the trial court is limited to questions of law. *Id.* The trial court's review of administrative agency decisions is somewhat broader and permits it to determine whether the decision was supported by a preponderance of substantial, reliable, and probative evidence on the whole record. *See Schultz*, 2012-Ohio-1459 at ¶21-23.

11

{¶63} As noted, Ohio Adm.Code 5101:2-14-06(A) and R.C. 5104.11(B) afford the county department of job and family services discretion as to whether revocation of a certificate is necessary. That decision necessarily involves a review of the evidence and is not strictly a matter of law. Accordingly, we remand this matter to the trial court for it to take whatever action it deems necessary, including remand to JFS, to consider whether the four remaining violations of the six-child rule constitute a basis for revocation of appellant's Type B provider certificate.

{¶64} Accordingly, for the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

MARY JANE TRAPP, J., concurs,

CYNTHIA WESTCOTT RICE, J., dissents with Dissenting Opinion.

_____

CYNTHIA WESTCOTT RICE, J., dissents with Dissenting Opinion.

{¶65} Because I disagree with both the analysis and disposition of the majority, I respectfully dissent.

{¶66} Following a hearing, JFS revoked appellant's Type B Home Child Care Provider Certificate based on the agency's finding that appellant repeatedly violated pertinent rules of the Ohio Administrative Code. Appellant filed an administrative appeal to the common pleas court under R.C. Chapter 2506. The trial court affirmed JFS' decision, finding there was reliable, probative, and substantial evidence to support the

12

agency's decision. On appeal to this court, appellant argues the trial court abused its discretion in affirming because, in her view, she did not violate the rules at issue or JFS should have considered a less severe sanction than revocation.

{¶67} Pursuant to R.C. 2506.04, the standard of review of the common pleas court in reviewing a decision of an administrative agency is whether the decision is supported by the preponderance of reliable, probative, and substantial evidence on the whole record. The common pleas court must affirm the decision of the agency if it is supported by such evidence. *Lewis v. Ohio Dept. of Human Serv.*, 137 Ohio App.3d 458, 464 (11th Dist.2000). R.C. 2506.04 gives the common pleas court the power to weigh the evidence when determining if an administrative decision is supported by reliable, probative, and substantial evidence. *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, fn. 4 (1984).

{¶68} In contrast, R.C. 2506.04 grants the court of appeals reviewing a decision of the common pleas court in an administrative appeal the limited power to review the court's judgment only on questions of law. *Rickard v. Trumbull Twp. Zoning Bd. of Appeals*, 11th Dist. Nos. 2008-A-0024, 2008-A-0025, 2008-A-0026, 2008-A-0027, and 2008-A-0028, 2009-Ohio-2619, ¶47-48, citing *Kisil, supra.* The statute does not give the court of appeals the same power to weigh the evidence as is granted to the common pleas court in its review of an agency's decision. *Rickard, supra*; *Kisil, supra*. The appellate standard of review is whether the common pleas court abused its discretion. *Id.* The term "abuse of discretion" is one of art, connoting judgment exercised by a court, which does not comport with reason or the record. *Gaul v. Gaul*, 11th Dist. No.

13

2009-A-0011, 2010-Ohio-2156, ¶24. Thus, if the trial court's judgment is supported by reason or the record, it is not an abuse of discretion.

{¶69} Ohio Adm.Code 5101:2-14-16(A), the so-called "six-child rule," provides that "[t]he type B home provider may provide child care for no more than six children at any one time * * *." JFS found that appellant failed to comply with this rule by providing care for more than six children at any one time on four different occasions, resulting in four violations of this rule.

{¶70} Further, Ohio Adm.Code 5101:2-14-20(K), the so-called "six-hour rule," states that "[t]he provider shall not provide child care services for [at least] six consecutive hours out of every twenty-four hour period, unless otherwise approved in writing by the [county department of job and family services.]" The agency also found that appellant violated this rule by providing child care without taking a six-hour break in a 24-hour period 55 times, resulting in 55 violations of this rule.

{¶71} R.C. 5104.11(B) provides: "If the county director of job and family services determines that the type B family day-care home complies with this chapter and any rules adopted under it, the county director shall issue to the provider a certificate to provide publicly funded child care * * *. The county director may revoke the certificate after determining that revocation is necessary." Further, Ohio Adm.Code 5101:2-14-06(A) provides: "If the county department of job and family services (CDJFS) determines that the * * * provider is not in compliance with Chapter 5101:2-14 of the Administrative Code and Chapter 5104. of the Revised Code, CDJFS * * * may revoke the certificate."

{¶72} JFS determined that, based on its finding that appellant had committed four violations of Ohio Adm.Code 5101:2-14-16(A) (the six-child rule) and 55 violations of Ohio Adm.Code 5101:2-14-20(K) (the six-hour rule), the revocation of appellant's certificate was warranted.

{¶73} In affirming the agency's decision, the trial court found there was reliable, probative, and substantial evidence to support the agency's decision. As noted above, in an administrative appeal, this court's review of the trial court's judgment is more limited than the review of the agency's decision undertaken by the trial court. The appellate court does not have the power to weigh the evidence, which is granted to the trial court. Instead, our review is limited to a determination of whether the trial court abused its discretion.

{¶74} On appeal to this court, appellant presents three arguments: (1) By paying appellant for her reported hours, the agency tacitly approved a "variance" from the six-hour rule; (2) Where appellant was not paid for the times she allegedly violated the six-hour rule or the six-child rule, she was not subject to these rules and thus did not violate them; (3) the agency abused its discretion by not considering a sanction less serious than revocation. In making these arguments, appellant asks us to interpret the evidence as not demonstrating a violation of the subject rules or as supporting a less serious sanction.

{¶75} By reversing the trial court's decision with respect to appellant's 55 violations of the six-hour rule, I believe the majority has engaged in a weighing of the evidence and thus exceeded this court's limited power of review, in violation of the

15

Supreme Court of Ohio's precedent in *Kisil*, *supra*, and this court's precedent in *Rickard*, *supra.*

**{¶76}** The majority interprets Ms. Monahan's act of signing off on appellant's reported hours so she could be paid as an "approval in writing" of appellant's repeated violations of the six-hour rule. However, the majority conveniently ignores Ms. Monahan's testimony that she was never aware of appellant's violations of this rule. "Approval" is defined as "to be satisfied with," to confirm, ratify, sanction, or consent to something done by another; * * * to admit the propriety * * * of. * * *." Black's Law Dictionary 132 (4th Ed.1968). Thus, approval is not, as the majority incorrectly assumes, determined from the perspective of the party receiving approval, but, rather, from the vantage point of the party giving approval. As a result, contrary to the majority's opinion, appellant's "assumption" that she had the agency's approval of her violations is irrelevant. Since Ms. Monahan was unaware of the violations at the time she signed off on appellant's reported hours, her act of signing off could not, as a matter of law, be "an approval in writing" of appellant's 55 violations of the six-hour rule.

**{¶77}** Since the trial court's judgment was supported by the court's well-articulated analysis and the record, I believe the majority is incorrect in finding the trial court abused its discretion in affirming JFS' decision. As a result, I would affirm.